The Honorable Jeff Wood State Representative 4097 Austin Lakes Circle Sherwood, AR 72120-8019
Dear Representative Wood:
I am writing in response to your request for my opinion on the following question:
 Can impact fees generated by Act 1719 of 2003 be used in conjunction with funds from Tax Incremental Financing to retire a bond issue?
RESPONSE
I assume from your reference to "Tax Incremental Financing" that the question pertains to "redevelopment" bonds secured by tax increment financing ("TIF") pursuant to Amendment 78 to the Arkansas Constitution and its implementing legislation (A.C.A. § 14-168-301 to -322 (Supp. 2003)).[1] The answer to this question is, generally, "yes," in my opinion, if the tax increment secured bonds were issued to construct improvements that are provided for in the development impact fee ordinance adopted under Act 1719 of 2003 (A.C.A. § 14-56-103 (Supp. 2003)). It would seem that the impact fees would be properly expended in that instance, pursuant to § 14-56-103.
Some explanation of these laws is necessary. Amendment 78 authorizes the creation of "redevelopment districts" by cities and counties and the financing of "redevelopment projects" within such districts by tax increment financing-secured bonds ("tax increment bonds," A.C.A. §14-168-306(b)(4) (Supp. 2003)), i.e., bonds to be repaid using the incremental increase in property taxes over time. See Ark. Const. amend.78, § 1 (a), (b) and (d) and A.C.A. §§ 16-168-312 and -315 (Supp. 2003). The term "redevelopment project" is defined broadly under A.C.A. § 16-168-301(13) (Supp. 2003) to include land acquisition and development, construction of capital improvements, and "[a]ny other projects the local governing body deems appropriate to carry out the purposes of [the] subchapter[,]" i.e., to improve "blighted" areas or increase employment.Id. All proposed public works or improvements are to be identified in a "project plan" that includes a description of the methods of financing the "project costs." A.C.A. § 16-168-306(b)(1) and (4). "Project costs" means:
 [E]xpenditures made in preparation of the project plan and made, or estimated to be made, or monetary obligations incurred, or estimated to be incurred, by the local government, which are listed in the project plan as costs of public works or improvements within a redevelopment project district, plus any costs incidental thereto.
A.C.A. § 16-168-301(9)(A) (emphasis added).
Tax increments and other revenues designated for the redevelopment district are deposited into a special fund from which all project costs are paid. A.C.A. §§ 16-168-301(14) and -305(e). The local governing body may, in addition to government grants and loans, "receive contributions from any other source to defray project costs[.]"
Regarding "impact fees," Act 1719 of 2003 (A.C.A. § 14-56-103 (Supp. 2003)) authorizes a municipality or a "municipal service agency"[2] to assess a "development impact fee" in order to generate revenue "to offset costs . . . that are reasonably attributable to providing necessary public facilities to new development." A.C.A. § 14-56-103(b) (Supp. 2003). "Public facilities" are defined as "publicly owned facilities that are one (1) or more of the following systems or a portion of those systems:"
 (A) Water supply, treatment, and distribution for either domestic water or for suppression of fires;
(B) Wastewater treatment and sanitary sewerage;
(C) Storm water drainage;
(D) Roads, streets, sidewalks, highways, and public transportation;
(E) Library;
(F) Parks, open space, and recreation areas;
(G) Police or public safety;
(H) Fire protection; and
(I) Ambulance or emergency medical transportation and response.
Id. at (a)(7).
Impact fees are assessed, collected, and expended under a "development impact fee ordinance" that contains, inter alia, a statement of the public facilities and capital improvements that are to be financed by the fees. A.C.A. § 14-56-103(e). Funds collected under the ordinance are deposited into a special interest-bearing account. Id. at subsection (g). The fee may be used only for the planning, design, and construction of new public facilities or capital improvements to existing facilities, or to recoup prior capital improvements to public facilities. Id. at (c)(1).
Turning to your question regarding the use of development impact fees assessed under A.C.A. § 14-56-103 to retire tax increment bonds issued under Amendment 78 and A.C.A. § 16-168-301 et seq., in my opinion the propriety of such use depends upon whether the impact fees would thereby "offset costs to the municipality . . . that are reasonably attributable to providing necessary public facilities to new development" as contemplated by the impact fee statute. See A.C.A. § 14-56-103(b). This ultimately is a factual question that requires reference to the particular impact fee ordinance and the redevelopment project plan. You have asked the question generally, without reference to a particular project or projects; consequently no definitive answer is possible in the limited format of this opinion. As a general proposition, however, it seems clear that public facilities for which impact fees may be assessed could be included as part of a redevelopment project that is financed through a tax increment bond issue. As indicated above, the local government has broad authority to determine what public works or improvements to include in a project plan under A.C.A. § 16-138-306. If, in fact, your question pertains to a TIF-secured bond issue for improvements that include public facilities to be financed by impact fees as reflected in the impact fee ordinance, it is my opinion that the answer is generally "yes." I find nothing in A.C.A. § 14-56-103 that would prevent the use of impact fee revenues to retire such a bond issue. I assume that the impact fees would be collected and deposited in accordance with A.C.A. § 14-56-103, and the proceeds contributed to the "special fund" established by the redevelopment district from which all redevelopment project costs are paid. See A.C.A. §§ 14-168-301(14) and -305(e). This would appear to be authorized, as long as all of the improvements to be financed by the impact fee are included in the redevelopment project(s) funded by the tax increment bonds.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] I also assume that your inquiry contemplates a contribution of impact fees to retire previously issued TIF bonds, and not a pledge of the impact fees to secure the bond issue. Development impact fees clearly may be pledged to the payment of bonds issued to finance improvements for which the fees may be imposed. A.C.A. § 14-56-103(c)(2) (Supp. 2003). But if TIF bonds are secured by a pledge of impact fees, a question may arise as to whether such a pledge implicates Ark. Const. amend. 65 (the "revenue bond" amendment) and its attendant requirements. Because you have referred to tax increment financing, however, I presume that your question only contemplates Amendment 78 bonds that are secured by tax increments (see Ark. Const. amend. 78, § 1(b)).
[2] A "municipal service agency" is defined as: "(A) Any department, commission, utility, or agency of a municipality, including any municipally owned or controlled corporation; (B) Any municipal improvement district, consolidated public or municipal utility system improvement district, or municipally owned nonprofit corporation that owns or operates any utility service; (C) Any municipal water department, waterworks or joint waterworks, or a consolidated waterworks system operating under the Consolidated Waterworks Authorization Act, §25-20-301 et seq.; (D) Any municipal wastewater utility or department; (E) Any municipal public facilities board; or (F) Any of these municipal entities operating with another similar entity under an interlocal agreement in accordance with § 25-20-101 et seq. or § 25-20-201 et seq.[.]" A.C.A. § 14-56-103(a)(5) (Supp. 2003).